## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## ELKINS

**DALE P. FIELD,**

      Plaintiff,

v.                                                                  **Civil Action No.** 2:16-cv-97
                                                                    (Judge Bailey)

**JUDY FITZGERALD,**
In her official capacity as Adult
Parole Authority,

**GRAY MOHR,**
In his official capacity as Director
of Rehabilitation and Corrections,

**CYNTHIA MAUSSE**R
In her official capacity as Chief,
Ohio Adult Parole Authority

      Defendants.

### REPORT AND RECOMMENDATION/OPINION RECOMMENDING ALL MOTIONS TO DISMISS BE GRANTED AND THE PLAINTIFF'S COMPLAINT BE DISMISSED

This matter before the Court is pursuant to Defendant Judy Fitzgerald's Motion to Dismiss (ECF No. 22) and Defendants Gray Mohr and Cynthia Mausser's Motion to Dismiss (ECF No. 23).

### I.      PROCEDURAL HISTORY

On November 11, 2016, pro *se* Plaintiff Dale P. Field, Jr. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 1983, petitioning the court to issue a Preliminary Order for "Polygraph tests to be stayed by the Court as unconstitutional" or "to be permitted to have an attorney present at all polygraph tests taken as appointed counsel by the state." (ECF No. 1).

Plaintiff's November 14, 2016, Motion for Court Appointed Counsel (ECF No. 4) and Motion for Emergency Stay (ECF No. 3) were denied by Order (ECF No. &) dated December 8, 2016.  Plaintiff's application to proceed without prepayment of fees and affidavit was granted on that same day. (ECF No. 8). Plaintiff's subsequent appeal to the District Court of the Magistrate Judge's opinion was denied December 9, 2016. (ECF No. 12). Plaintiff filed a notice of Emergency Interlocutory Appeal on January 9, 2017, (ECF No. 14) which was dismissed pursuant to Local Rule 45 on February 26, 2017. (ECF No. 27).

The first Motion to Dismiss was filed by Defendant Fitzgerald on January 31, 2017. (ECF No. 22). The second Motion to Dismiss was filed by Defendants Mausser and Mohr on February 3, 2017. (ECF No. 23).

## II.      RELEVANT BACKGROUND

Plaintiff was previously incarcerated in Ohio on March 4, 2011, for one count of Unlawful Sexual Conduct with a Minor, in violation of R.C 2907.04(A)(B)(3) and was sentenced to three years of confinement and five years of supervised release. (ECF No. 22-1 at 1-2). Prior to release, Plaintiff requested to serve his time on supervised release in West Virginia through the Interstate Commission for Adult Offender Supervision ("ICAOS"). (Id. at 2).  Plaintiff agreed to the terms of his supervision contingent upon ICAOS rules and the rules proscribed by probation in the State of West Virginia upon transfer. (ECF No. 22-2 at 12). Plaintiff signed that he recognized he would be subjected to polygraph examinations at that time, and completed examinations during his first supervised release without incident. (Id. at 25-28).

On May 13, 2014, Plaintiff was arrested again by the Grafton City Police, and charged with five counts of incest in violation of West Virginia Code 61-2-12(b). (ECF No. 22-3 at 23-24). After signing a plea agreement, Plaintiff plead guilty to two counts of sexually motivated

2

Domestic Battery, in violation of West Virginia Code 61-2-28(a), and was sentenced to two

years of incarceration. (ECF No 22-3 at 25-30). As a result of the conviction and sentencing,

Plaintiff's supervision under ICAOS in West Virginia was terminated on or about October 7,

2015, and Plaintiff was returned to Ohio to serve his sentence. (ECF No. 22-1 at 3).

Upon his release from custody in Ohio, Plaintiff again requested his supervised release to

be served in West Virginia and was accepted by WVDOC Parole Services under ICAOS. (ECF

No. 22-3 at 31-40). Plaintiff returned to West Virginia on July 8, 2016, and again agreed to the

same terms and conditions of supervision that included he submit to polygraph examinations.

(Id. at 41-46).

### III.   CONTENTIONS OF PARTIES

#### A. **Plaintiff's Complaint**

In his complaint, Plaintiff asserts that mandatory polygraph examinations violate his

rights under the Fifth, Eighth, and Fourteenth Amendments of the Constitution. More

specifically, Plaintiff asserts that (1) the polygraph examination is a self-incriminating violation

of Plaintiff's Fifth Amendment rights, arguing the statements that are made can be used against

him as a statement to law enforcement, and emphasizing failure to pass the polygraph incurs

additional sanctions and punishments; (2) no attorney present during the polygraph testing makes

it a violation of Plaintiff's Fifth and Sixth Amendment rights to counsel, and his Fourteenth

Amendment right to Equal Protection; and (3) polygraph testing is a cruel and unusual

punishment under the Eighth and Fourteenth Amendments of the Constitution, arguing failure to

comply or answer polygraph questions will result in a violation of Plaintiff's supervision, and

further arguing that not all offenders are mandated to take polygraph examinations as a condition

of supervision. (ECF No. 1).

### B. **Defendants' Motions to Dismiss**

#### 1. Defendant Fitzgerald

In her Motion to Dismiss, Defendant Fitzgerald asserts that she is an improperly named Defendant in the matter because she is a state official acting in her official capacity; and that the mandatory polygraph testing is a valid aspect of Plaintiff's post release supervision because the testing does not have criminal implications, trigger Plaintiff's constitutional right to counsel, or amount to cruel and unusual punishment. (ECF No. 23)

#### 2. Defendants Mohr and Mausser

In their Motion to Dismiss, Mohr and Mausser assert that the mandatory polygraph testing is a valid aspect of defendants supervised release because it is permitted under West Virginia Law; and argues any claims against Mohr and Mausser as Ohio prison officials are now moot given that he is subject to post conviction supervision in West Virginia. (ECF No. 22).

## IV.    STANDARD OF REVIEW

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, Rule 8(a)(2) states that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Needing more than just "labels and conclusions," a complaint must provide factual support other than just a "formulaic recitation of the elements of a cause of action." Id.

Because Plaintiff is proceeding *pro se*, the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro se* complaint is subject to dismissal, however, if the Court cannot reasonably read

the pleadings to state a valid claim on which the plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## V.      ANALYSIS

The Defendants' motions raise similar arguments as to why Plaintiff's Complaint should be dismissed. Thus, this court will examine the central arguments to consider why Plaintiff's Fifth, Sixth, Eighth, and Fourteenth Amendment claims fail to state a claim upon which relief can be granted.

### A. Because Plaintiff's polygraph examinations are reasonably related to the nature and circumstances of Plaintiff's offenses and are a valid treatment tool,  the examinations can be imposed as a condition of his post release supervision.

West Virginia Statutory law provides that any person who " is required to register as a sex offender . . . and who is ordered by a circuit court or supervising entity to undergo polygraph examination as a condition of probation, parole or supervised release, shall, as a condition . . . submit to polygraph examinations as prescribed."  West Virginia Code § 62-11D-2(a)(2)(2016).

In addition to statutory law, the Fourth Circuit has held that polygraph examinations may be imposed as a valid condition of a defendant's post release supervision. See United States v. Dotson, 324 F.3d  256 (4th Cir. 2003) (finding that plethysmograph tests and polygraph examinations can be imposed as special conditions of a defendant's release when used as a treatment tool).  District courts have a broad authority to impose appropriate conditions of post supervised release that provide "no greater depravation of supervision than is reasonably necessary."  United States v. Crandon,173 F.3d 122, 127 (3rd Cir. 2009).

Conditions of post supervised release are appropriate when "reasonably related'" to "the nature and circumstances of the offenses and the history and characteristics of the defendant." Dotson, 324 F.3d at 260; 18 U.S.C. A § 3553(a)(1)(West 2000); providing adequate deterrence, see § 3553(a)(2)(B); protecting the public from further crimes, see § 3553(a)(2)(C); and providing the defendant with treatment, see § 3553(a)(2)(D).  Polygraph examinations are a condition of post release supervision because it is seen as a "treatment tool upon an offender's release from prison." Dotson, 324 F.3d at 261. Overall, polygraph examinations as a treatment tool provide added incentives for offenders to be honest with their probation officer and promote compliance with probation terms. United State  v. Johnson, 446 F.3d 272, 277 (2006).

Because it is contemplated as a treatment tool, the examination must not be aimed at "gathering evidence to inculpate or exculpate" an offender. Dotson, 324 F.3d at 261; United States v. Lee, 315 F.3d 206, 213 (3rd Cir 2003); United States v. Zinn, 321 F.3d. 1084, 1090 (11th Cir. 2003). West Virginia statutory law is consistent with this requirement. In regards to polygraph examinations as a condition of post release supervision, W.Va. Code § 62-11D-2(e)(2) states that the polygraph analyst may not:

> Disclose any information gained during any full disclosure or sexual history polygraph examination to any law-enforcement agency or other party, other than the supervising entity, without the supervised person's consent, nor shall any information or disclosure be admissible in any court of this state, unless such information disclosed indicates the intention or plan to commit a criminal violation of the laws of this or another state or of the United States in which case such information may be released only to such persons as might be necessary solely to prevent the commission of such crime.

WVDOC Parole Services' policy regarding polygraph examinations is consistent with using the examinations as a risk assessment and treatment tool related to Plaintiff's treatment as a registered sex offender. (ECF No. 22-3 at 14-15).

Polygraph examinations as a useful treatment tool is especially applicable here, given the "nature and circumstances of the offense and the characteristics of the [plaintiff]." United States v. Johnson, 446 F.3d 272, 278 (2nd Cir. 2006) (quoting United States v. Germosen, 139 F. 3d 120 (2d Cir. 1998).   Plaintiff is a repeat sexual offender. (ECF No. 22-1 at 9). Polygraph examinations are reasonably related to promoting his truthfulness with WVDOC Parole Services and treatment providers, protecting the public, and deterrence from committing further offenses while he is undergoing treatment under WVDOC post release supervision.

Plaintiff does not allege that the results of his examination have been used to incriminate him outside the legal boundaries set by Fourth Circuit case law and West Virginia statutory law. (ECF No. 1). His examination results have not been improperly disclosed, affected his supervision status, resulted in sanctions, or led to criminal investigations. (Id.) Because the polygraphs are reasonably related to the nature and circumstances of Plaintiff's offenses and are being used as a valid treatment tool, imposing polygraph examinations on Plaintiff can be included as a condition of his supervised release.

### B. The special condition of release requiring Plaintiff to submit to polygraph examinations do not violate Plaintiff's Fifth Amendment right against self-incrimination.

The Fifth Amendment states no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The Fifth Amendment is only invoked in any proceeding "where the answers might incriminate in future criminal proceedings." Minnesota v. Murphy, 465 U.S. 420, 426 (1984) (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)).  A communication falls under Fifth Amendment Privilege when it is "testimonial, incriminating, and compelled." Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177, 189 (2004).  Polygraph examinations measure physical responses to questions.  It is without

question that the responses and measurements of the responses to questions posed during a polygraph examination are essentially testimonial communication. <u>Schmerber v. California</u>, 384 U.S. 757, 764 (1966).  However, Plaintiff's claim that polygraph examinations violate his Fifth Amendment right against self-incrimination lacks merit because the testimonial communication is neither incriminating nor compelling.

> **1.    Polygraph examinations as a condition of post release supervision are not an incriminating communication because the evidence is not admissible at trial and not automatically disclosed to authorities unless it presents an imminent danger.**

Polygraph examinations as a condition of post release supervision are not an incriminating communication because the evidence, although prejudicial, cannot be used at trial and it is not automatically disclosed to the authorities. "It is undisputed such evidence is inadmissible in nearly every circumstance at trial" and an individual would be free to challenge the admission of the evidence should it be used against them in a future proceeding. <u>Dotson</u>, 324 F.3d at 261; <u>Johnson</u>, 446 F.3d at 278-80.

Polygraph examinations as a condition of post release supervision carry an unconstitutional risk of self-incrimination when the threat of incrimination is "real and appreciable." <u>McCoy v. Comm'r</u>, 6969 F.2d 1234, 1236 (9th cir. 1983). The threat of self-incrimination from polygraph examinations is "real and appreciable" when it is made clear by probation and examiners that any answers indicating evidence of past sex crimes will be turned over to the authorities or lead to additional convictions if the offender was ever charged with another sex crime. <u>See</u>  <u>United States v. Antelope</u>, 395 F.3d 1128, 1135 (9th Cir. 2005) (finding a violation of defendant's right against self-incrimination when  polygraph examination evidence of all past sexual crimes would be turned over to the authorities and polygraph information automatically reported to authorities if a minor was involved);  <u>see also</u> <u>Von Behren</u>, 822 F.3d

1139 (10th Cir. 2016) (finding a violation of defendant's right against self-incrimination when polygraph examinations that revealed admissions of uncharged sexual crimes would be reported to the authorities and could be used as evidence if defendant was ever charged with a new sexual crime).

In West Virginia, statutory law and case law prevent an unconstitutional risk of self-incrimination when polygraph examinations are a condition of post release supervision because there are clear limitations on when information can be used at trial or disclosed to authorities. W.Va. Code § 62-11D-2(e)(2) clearly prohibits the admission of any polygraph examinations as evidence in court proceedings. The code also limits disclosing information from polygraph examinations to law enforcement or other parties unless there is imminent danger or the parole supervisor's consent. Furthermore, WVDOC policy reaffirms that there is no threat of automatic disclosure to law enforcement or others for information obtained during the polygraph examinations:

> No disclosure of information obtained by a DOC required polygraph examination should be made to anyone other than Parole Supervisors unless the information obtained indicates that harm to person or persons is imminent. If no imminent danger is present, disclosure of information obtained by polygraph should only be done after a review by Parole Supervisors and DOC Legal. (ECF No. 22-3 at 7-9).

In his complaint, Plaintiff alleges that "any incriminating statements can be used against the individual as a statement to law enforcement to furnish a link in the chain of evidence that could lead to prosecution . . . and reasonably believes could be used against him in criminal prosecution" (ECF No. 1 at 6).  However, West Virginia case law, statutory law, and WVDOC policy provide sufficient protections from self-incrimination by completely excluding the evidence from trial and only mandating that the polygraph information be disclosed in situations of imminent danger or after review and legal consultation.

Plaintiff relies upon Von Behren to claim that polygraph examinations as a condition of his post release supervision violates his Fifth Amendment right because the communication is incriminating and furnishes "a link in the chain of evidence that could lead to prosecution." (ECF No. 1 at 6).  In Von Behren, probationer was asked to admit that he committed uncharged sex crimes, which would have been reported to the authorities.  The court found that affirmative answers to the posed questions would provide a "'lead' or 'link in the chain of evidence," needed to prosecute probationer, and thereafter found that the polygraph condition violated Plaintiff's Fifth Amendment privilege to right against self-incrimination.

Unlike Von Behren, however, here, there is no Fifth Amendment violation because the polygraph results do not incriminate Plaintiff for any past or future violation. See Dotson, 324 F.3d at 261. As stated above, West Virginia law and policy prevent the disclosure of any information from the examination without the proper cause of imminent danger or legal review. Moreover, the polygraph examination would not be unconstitutionally incriminating even if Plaintiff's answers furnished a reason for the beginning of an investigation due to an imminent danger because potentially incriminating questions may be posed to sexual offenders on post release supervision for the purpose of using the examination findings to protect the public or provide adequate deterrence. Dotson, 324 F.3d at 260; 18 U.S.C. A § 3553(a) (West 2000). Additionally, Plaintiff does not allege that the results of his examination have been improperly disclosed or led to any criminal investigations. Because responses to incriminating questions posed to Plaintiff during a polygraph examination are not admissible in court proceedings, and only those responses that pose an imminent danger are reported to authorities, the threat of incrimination is eliminated.

> **2.   Polygraph examinations as a condition of Plaintiff's post release supervision are not compelled communication because he was not threatened with the imposition of a penalty sufficient to overcome invoking his Fifth Amendment privilege.**

Generally, if a defendant wishes not to incriminate himself and invoke the Fifth Amendment privilege against self-incrimination, a defendant must assert the privilege rather than answer the incriminating question. Murphy, 465 U.S. at 429.  However, an exception to the general rule involves "penalty cases," which foreclose a free choice to remain silent.  Id.  The Supreme Court determined that "if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation . . . and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." Murphy, 465 U.S. at 434.

Here, while Plaintiff asserts that his probation would be revoked for failing to comply with the polygraph examinations, he failed to provide any evidence of such threat.  The language in Plaintiff's special conditions provides that additional parole conditions may be placed on Plaintiff and any violations of those conditions may lead to revocation. (ECF No. 22-3 at 42) Revocation is not threatened for failure to comply with polygraph examinations, but for failure to abide by conditions of his probation.  If any alleged violation of probation were to occur, Plaintiff would be given the opportunity to appear before the court for a hearing before revocation can occur.  Additionally, the state court cannot revoke Plaintiff's probation on the sole basis of him asserting his Fifth Amendment privilege. United States v. Lara, 850 F.3d 686, 693 (4th Cir. 2017) (citing Murphy, 45 U.S. at 438); see also United State v. Ramos, 685 F.3d 120, 128-29 (holding that a possibility of invoking the Fifth Amendment privilege "*could* lead to the initiation of violation proceedings or the revocation of his parole" was insufficient to create a penalty condition); Lara, 850 F. 3d 686 at 692 (finding the probationer "was never threatened

with the imposition of a penalty sufficient to overcome his freedom of choice to remain silent," when the probationer failed to provide evidence that his probation would be revoked if he failed to answer incriminating questions.)

Here, the state has not threatened to impose revocation if Plaintiff chooses to exercise his Fifth Amendment right and he is therefore not compelled to incriminate himself.   Plaintiff has an obligation to answer questions truthfully.  The answers to the questions posed to him are not compelled within the meaning of the Fifth Amendment unless he is required to answer over a valid claim of the privilege. Murphy, 465 U.S. 420 at 427.  If Plaintiff asserts the privilege, and there is some rational basis for believing that answering a question will incriminate him, he may not be required to answer the question. Id. at 429.

Assuming arguendo, Plaintiff is compelled to answer incriminating questions; the answers would be deemed compelled and inadmissible in a later criminal prosecution. Id. at 435. See also Lefkowitz, 414 U.S. 70 at 78 (stating "a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant . . . Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.").  Nevertheless, because there is not a certain threat of revocation, Defendant is not compelled to self-incriminate.

**C.  <u>Plaintiff does not have a constitutional right to counsel during polygraph examinations under the Fifth, Sixth, or Fourteenth Amendments.</u>**

First, Plaintiff does not have a right to counsel at polygraph examinations because during the examinations the offender is not in "custody," which is necessary to trigger a Fifth Amendment right to counsel. See Miranda v. Arizona, 348 U.S. 436 (1966). Offenders on

probation do not have a constitutional right to have an attorney present at all meetings with a probation officer. Murphy, 465 U.S. at 430. Furthermore, the nature of probation is such that individuals should be expected to be questioned on a wide range of topics relating to their past criminality. Murphy, 465 U.S. at 432.

Here, Plaintiff is not under arrest during the examinations. As a convicted sexual offender, questions about past sexual history should be reasonably expected to be asked by WVDOC as a part of his treatment. Murphy, 465 U.S. at 432. Questions about Plaintiff's criminal history cannot be "potentially used" against Plaintiff. (ECF No. 1 at 5); Dotson, 324 F.3d at 261. Additionally, as a policy matter, it would be extremely impractical to require counsel to be present at every polygraph examination, therapy session, or meeting with WVDOC where plaintiff is questioned about his criminal history.

Second, Plaintiff does not have a Sixth Amendment right to counsel because the Sixth Amendment right is offense-specific: "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced. Const. amend. XI; McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). Here, Plaintiff alleges no such facts that he has been charged with a specific crime or that prosecution against him has commenced as a result of polygraph examinations.

Third, Plaintiff does not have a Fourteenth Amendment Due Process Clause right to counsel during the polygraph examinations because Plaintiff is already protected to the full extent of the law. U.S. Const. amend. XIV. W.Va. Code § 62-11D-2(e)(2) and WVDOC policy protect all offenders from self-incrimination, disclosure of information to the authorities or others, and future prosecution during polygraph examinations. (ECF No. 22-3 at 1-22).

**D.  Because polygraph examinations are a valid condition of Plaintiff's post release supervision and treatment, they do not violate Plaintiff's Eighth and Fourteenth Amendment rights.**

First, Plaintiff does not have a valid claim of cruel and unusual punishment under the Eighth Amendment. The cruel and unusual punishment clause was designed to protect those convicted of crimes in three ways: (1) it limits the kinds of punishment that can be imposed on those convicted of crimes, (2) it proscribes punishment grossly disproportionate to severity of crime, and (3) it imposes substantive limits on what can be made criminal and punished as such. U.S. Const. amend. XIII; Ingraham v. Wright, 430 U.S. 651, 697 (1977).

Plaintiff's claim does not amount to an Eighth Amendment violation under any of the three categories because polygraph examinations are a valid treatment tool as a part of an offender's post supervised release, not a cruel or unusual punishment. Dotson, 324 F.3d at 261. Petitioner argues that it is a cruel and unusual punishment for sanctions or other punishments to be imposed upon the parolee for failure to pass because the inaccuracy of the polygraph test is no fault of the individual. (ECF No. 1 at 5). WVDOC policy required that offenders are only sanctioned[1] for incomplete exams. (ECF No. 22-3 at 7-9). However, there is no punishment for taking the polygraph examination and attempting to answer the questions to the best of one's ability, and offenders are permitted to retake the examinations. (Id. at 36-40).

Second, Plaintiff does not have a Fourteenth Amendment Equal Protection Clause claim because all offenders required to register as sex offenders are equally subject to polygraph examinations under W.Va Code § 62-11D-(a)(2); See U.S. Const. amend. XIV. Plaintiff claims that by selecting sexual offenders for polygraph examinations he has suffered an unconstitutional additional punishment. (ECF No. 1 at 5). However, polygraph examinations are a valid condition

---

[1] Electronic Monitoring and increased supervision can be utilized as a high level sanctions or supervision tools (ECF No. 22-3at 6, 11)

of post release supervision and a treatment tool for all registered sex offenders in West Virginia based on the nature of the offense. Dotson, 324 F.3d at 261. Plaintiff pleads no facts that allege he is being treated differently than others with the same offense.

## VI.    RECOMMENDATION

Accordingly, for the reasons herein stated, the undersigned finds Plaintiff has failed to state a claim upon which relief can be granted and **RECOMMENDS** that Defendants' Motions to Dismiss [ECF Nos. 22 and 23] be **GRANTED** and that Plaintiff's Complaint (ECF No. 1) be **DISMISSED WITH PREJUDICE**. Any party may within fourteen (14) days after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

This report and recommendation completes the referral from the district court. Accordingly, the Clerk is directed to terminate the magistrate judge's association with this case. The Clerk is further directed to transmit copies of this Report and Recommendation to counsel of record and to send a copy to the *pro se* Plaintiff by certified mail, return receipt requested.

Respectfully submitted this July 18, 2017

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE